The CITY OF BISHOP, Appellant,

v.

SOUTH TEXAS ELECTRIC COOPERATIVE, INC., Appellee.

No. 1350.

Court of Civil Appeals of Texas, Corpus Christi.

Jan. 25, 1979.

Allan L. Potter, Corpus Christi, for appellant.

Willard Tinsley, Bellaire, Guy Allison, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This case involves an appeal from a take nothing judgment in a property damage suit. The volunteer fire department of the City of Bishop, Texas, responded to a grass fire on the King Ranch which was allegedly caused by the negligence of South Texas Electric Cooperative, Inc. During the course of the fire, a fire truck owned by the City was destroyed. Following a jury trial, the trial court rendered a take nothing judgment. The City has appealed. The parties will henceforth be referred to as "plaintiff" and "defendant," as they were in the trial court.

The jury, in response to Special Issue 3, found that on February 22, 1974 (when plaintiff's fire truck was destroyed while used to fight a grass fire), the members of plaintiff's volunteer fire department were negligent, and, in answer to Special Issue 4, found that such negligence was a proximate cause of the damage to the fire truck. The jury, in response to Special Issue 1, found that defendant was negligent, but, by its answer to Special Issue 2, failed to find that such negligence was a proximate cause of the damage to the fire truck. The parties attack the jury findings which were adverse to them by "no evidence" and "against the great weight and preponderance of the evidence" points. In addition, plaintiff further asserts that the evidence is "factually insufficient" to sustain the jury's answers to Special Issues 3 and 4.

On February 22, 1974, Aslow Zamzow and Milton Sievers, employees of defendant, were patrolling defendant's electric power line easement on, over and across a portion of the King Ranch. The easement, about fifty feet wide, was covered by thick grass which was about two or three feet tall. Zamzow and Sievers left defendant's office at Victoria, Texas, in a pickup truck at about 8:30 a. m. on February 22, 1974. They entered the easement at a point about two miles south of Bishop, Texas, at about 10:45 a. m. They had driven about two miles over the easement when they noticed a fire some two hundred yards behind them. At that time both the pickup and the fire, which was then about three feet in diameter, were within ten feet of the easement's center line. There was testimony to the effect that the truck had passed over the point where the fire began prior to the time the fire was discovered. Apparently, no one else was in the vicinity at the time. Upon discovering the fire, Zamzow and Sievers went back and tried to extinguish it with shovels. Sievers testified that they did not use a fire extinguisher in combating the fire although their truck was equipped with one at the time.

After failing to extinguish the fire on their own, Zamzow and Sievers summoned assistance by contacting defendant's Robstown Office and King Ranch personnel. Someone then called plaintiff's volunteer fire department. Two volunteer firemen responded and went to the fire in one of plaintiff's fire trucks, which was a "GI" truck that had been specially outfitted as a "Brush" fire truck for the purpose of fighting brush and grass fires. The plaintiff's firemen, along with personnel from the King Ranch came to the fire. They fought the fire for some time, and when it became evident that the water supply in the tank on the GI brush fire truck was running low, it was suggested that Wesley Goldman and Gene Hensley, two of plaintiff's volunteer firemen, proceed to plaintiff's fire station in Bishop and get another fire truck to assist in fighting the fire.

The truck which Goldman and Hensley obtained, and which was later destroyed by

the fire, was a fully equipped Chevrolet fire truck. Its equipment included two reel-type hoses one-inch in diameter, one four-inch hose, one two-inch preconnected hose in the back of the truck, and a pump that "could shoot" water a distance of forty to fifty feet from the nozzle of the particular hose then in use. The procedures for using the pump were: the driver pushed in the truck's clutch and engaged the pump lever, which, in turn, activated the pump's motor. After engaging the pump lever, the driver then put the truck's engine in third gear; the pump then disengaged the running gear of the truck and the driver engaged the transmission, which, in turn, drove the pump motor; the driver would then get out of the truck and control the valve to the pump; during all of such time, the other fireman operated the hose.

When Goldman and Hensley were dispatched to bring the Chevrolet fire truck to the scene of the fire, it was intended that the truck would be used only to refill the storage tank on the GI fire truck with water. Upon arrival at the scene in the fire truck, they discovered that the GI truck's tank had been refilled with water from a vacuum truck, supplied by King Ranch employees. The foreman of that particular portion of the King Ranch requested that the Chevrolet fire truck be placed near a road on the ranch to prevent the spread of the fire beyond that location. As time went by, several fires broke out beyond the road, which were successfully extinguished by Goldman and Hensley. About an hour later, Goldman and Hensley were requested by one of the King Ranch employees to move the truck to a firebreak which had been constructed by King Ranch personnel to prevent the spread of the fire beyond the firebreak. Accordingly, Goldman and Hensley moved the truck to the new location. At the time of such move, the GI fire truck and the King Ranch fire-fighting vehicles were on the opposite side of the fire, and were not then visible to either Goldman or Hensley.

At this point in time, the fire was moving towards the west, and its west line was approximately eighty feet east of the Chev-rolet fire truck. It became obvious to Goldman that the fire would soon reach the firebreak and he doubted that the firebreak would contain the fire; it was decided to move the truck into the grassy area west of the advancing fire and to pump water on the fire. Goldman then unrolled about fifty feet of hose, and Hensley, the then driver of the truck, moved the truck from its stationary position in the firebreak and followed the above-stated procedures for pumping operations. However, he was unable to pump water in the quantity needed. The engine motor was kept running at all pertinent times, and Hensley, in his attempts to pump water, "revved" the truck's engine. Because the fire was then perilously close to the truck, Hensley ceased his efforts to pump water and attempted to drive the truck away from the fire. The truck's motor died and he was unable to restart it. Hensley was forced to abandon the truck which was subsequently engulfed with flames and destroyed.

It was established by the evidence that the Chevrolet fire truck's motor had been fully functional and operational at all times prior to the time that it would not restart. The truck was checked weekly for mechanical problems. None were discovered. Goldman testified that he thought he could have controlled the fire if the pump on the truck had worked. He also testified that the truck may not have burned if the firebreak, which was built by King Ranch employees after the fire started, had extended all the way to the fenceline.

With respect to the cause of the fire itself, Bennie Spaulding, fire chief of the Kingsville fire department, Kingsville, Texas, testified that it could have been the hot muffler of the defendant's truck coming into contact with the thick and high grass growing on the easement. The grass was cut every two years or so, depending on weather conditions.

Concerning the procedures utilized by Goldman and Hensley to fight the grass fire, Spaulding testified that the preferable way to fight a grass fire would be to fight

the fire from inside an already burnt area rather than from a point in high grass not yet burned. He stated that one should get into high grass while fighting a grass fire only if it is absolutely necessary, such as when the smoke is too intense or the wind has suddenly shifted. The procedures outlined by Spaulding were based on the reasoning that it is better to fight a fire from behind so that it cannot spread in the direction of the firemen. There is no evidence that Goldman and Hensley were confronted with intense smoke or a sudden wind shift. Goldman, on the other hand, testified that he did not think that the fire truck should have driven out into the burned area because of the danger of "hot spots" which might catch the truck on fire. Spaulding testified that it was standard practice to work around hot spots. Hensley, however, recognized the reasoning behind Spaulding's theory that grass fires should be fought from inside the burned out area.

■ We have read the record in its entirety, and, in accordance with the well established rule in disposing of the "no evidence" points, have considered only the evidence which, when viewed in its most favorable light, supports the jury's findings and have disregarded all evidence which would lead to a contrary result. Furthermore, in disposing of the "against the great weight and preponderance of the evidence points," we have carefully considered and weighed all of the evidence. Accordingly, plaintiff's points 3 through 8 and defendant's cross-points 1 and 2 are overruled.

We next turn to plaintiff's attack on the failure of the jury to find that defendant's negligence was a proximate cause of the damage to the Chevrolet fire truck. As has been stated, plaintiff contends 1) there is no evidence to support the finding that defendant's negligence was not a proximate cause of the damage, and 2) such finding is against the great weight and preponderance of the evidence.

■ In Texas, two elements are necessary to constitute proximate cause: 1) cause in fact and 2) foreseeability, *Hopson*

*v. Gulf Oil Corp.,* 150 Tex. 1, 237 S.W.2d 352, 355 (1951). There must be proof of both elements. *Enloe v. Barfield,* 422 S.W.2d 905, 908 (Tex.1967). In the instant case, the cause in fact element of proximate cause is established by the evidence. Clearly, the plaintiff's fire truck would never have been destroyed if the grass fire had not been started as a result of the negligence of defendant's employees. The question to be resolved is whether the foreseeability element was proved. The test for foreseeability is whether the negligent defendant, as a person of ordinary intelligence and prudence, should have anticipated the danger to others created by his negligent act, although it is not required that he anticipate just how the injuries will arise out of the dangerous situation. *Sullivan v. Flores,* 134 Tex. 55, 132 S.W.2d 110, 111 (1939). It has been held that when a defendant has violated a duty imposed upon him by the common law, he should be held liable to every person injured, whose injury was the natural and probable consequence of the misconduct. *Seale v. G., C. & S. F. Ry. Co.,* 65 Tex. 274 (1886).

■ In determining questions relating to the foreseeability element of proximate cause our Supreme Court has uniformly applied what might be termed a practical, common sense test, the test of common experience. *San Antonio & A. P. Ry. Co. v. Behne,* 231 S.W. 354 (Tex.Comm'n App.—1921, jdgmt adopted). Applying the test of common experience to the facts of the case at bar, we do not believe that defendant's negligence in starting the fire could be justly regarded as a proximate cause of plaintiff's damages. Plainly, defendant should have known that firefighters and their equipment would respond to the fire. Likewise, defendant should have reasonably anticipated a fire truck becoming immobilized in the area of the fire because of hidden tree stumps, bailing wire, or ground ruts therein. Such dangers are inherent in fighting a grass fire in an overgrown pasture or field within the enclosures of ranch land. Nothing short of prophetic ken, however, could have anticipated the happening

of the combination of events which resulted in the truck's destruction in this case. *See Gulf, C. & S. F. Ry. Co. v. Bennett,* 219 S.W. 197 (Tex.Sup.1920). No one standing at the stage of events leading up to the fire and its assault upon the human defenders could have regarded it as other than a bare possibility at best, that at a later period of the fire's spread, the equipment of the fire truck being used to extinguish the fire would fail to work, or that the truck's engine would die and would not restart, and as a result of such failures would be destroyed by the fire itself. Defendant's employees had no reason to anticipate that those failures would occur while the fire truck in question was being used to fight the fire. It was precisely those failures that constituted the efficient causes of the truck's destruction.

 It is well settled in Texas that a prior and remote cause cannot be made the basis for an action for damages if it did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible if the injury is the result of some other cause which reasonable minds would not have anticipated, even though the injury would not have happened but for such condition. *Bell v. Fore,* 419 S.W.2d 686 (Tex.Civ.App.—Texarkana, 1967), aff'd 434 S.W.2d 117 (Tex.1968); *Robertson v. Southwestern Bell Telephone Co.,* 403 S.W.2d 459 (Tex.Civ.App.—Tyler, 1966, no writ). Here, the fire was nothing more than a prior cause which furnished the condition that made possible the destruction of the truck. The injury itself was the result of firefighting equipment failures, remote causes which reasonable minds would not have anticipated.

In essence, two causes concurred to produce the injury incurred by plaintiff in this case: the negligence of the defendant in starting the grass fire and the unanticipated failure of the plaintiff's equipment while fighting the fire. The latter cause, however, was an improbable situation not usually happening in the common course of events. This distinguishes the case at bar from one such as *Hopson v. Gulf Oil Corp.,*

supra, where a seaman was injured while moving heavy oil drums aboard ship while at sea. There, two causes concurred to produce the injury: the failure of the defendant to furnish the plaintiff with a helper and the presence of grease on the deck of the ship. Unlike the equipment failure in the case now before us on appeal, the presence of grease in *Hopson* was not improbable. It was not so unusual as to be wholly without the sphere of events which a defendant ought reasonably to have anticipated. See *San Antonio & A. P. Ry. Co. v. Behne,* supra.

For us to hold in this case that defendant's negligence was a proximate cause of the plaintiff's damages would be tantamount to making owners and occupiers of easements across ranch lands insurers against loss of equipment by fire departments when fighting fires. If a city could recover for a fire truck which was destroyed while fighting a fire where the fire truck could have been saved had it (the truck) performed up to minimal standards of efficiency, then the city could recover for any such damages, no matter how improbable, so long as the defendant was negligent. That is not the law, however, in Texas, nor should it be. Thus, even though the truck in this case would never have been lost but for defendant's negligence in starting the grass fire, we cannot hold that foreseeability, an element of a proximate cause of plaintiff's damages, was proved. We, therefore, overrule plaintiff's points 1 and 2 which, in effect, complained of the jury's finding that defendant's negligence was not a proximate cause of plaintiff's damages.

 Plaintiff, by points of error 9 and 10, further contends that the trial court committed reversible error in refusing to submit its requested instructions concerning "rescue," which read, as follows:

"One is not negligent in an effort to save land or property of a third person from harm unless he acts in a rash, imprudent and negligent manner."

\* \* \* \* \* \*

"It is not negligence for a person to expose himself to danger in an effort to save the land or property of a third person from harm unless the effort itself is unreasonable or he acts unreasonable in the course of it."

We have carefully considered all arguments made by plaintiff in its brief in support of its position. We hold that the trial court properly refused to submit either of the requested instructions. Moreover, the failure to submit the requested instructions did not amount to such a denial of plaintiff's rights "as was reasonably calculated to cause and did cause the rendition of an improper judgment in the case." Rule 434, T.R.C.P. Points 9 and 10 are overruled.

 Plaintiff, in point of error 11, asserts that the trial court "erred in failing to allow appellant to show voluntary payments by appellee as admissions." Plaintiff requested that defendant admit that it (defendant) contributed $1,000.00 to plaintiff "to assist in purchasing a new fire truck in 1974 after the fire which is the basis of this suit." According to the statement of facts, defendant admitted that it did make such a contribution. At the trial, plaintiff offered the admission "as an admission of liability after the accident." The trial court sustained defendant's objection to the tender of such admission, apparently on the argument advanced by defendant's counsel that "it's not an admission of guilt or negligence on the part of this defendant," but was made "strictly in a form of contribution . . . in hopes to add to the purchase of a new fire truck." Counsel for plaintiff, then on a bill of exception, called Mrs. Jo Pierce, plaintiff's City Secretary, who testified, as follows:

"Q. Following this fire did you receive any correspondence from South Texas Electric Cooperative, Inc.?

A. Yes, I did.

Q. Is that document in front of you one of these pieces of correspondence?

A. Yes, it is.

Q. Who is that document from?

A. Riggs Shephard, General Manager, South Texas Electric Cooperative."

Whereupon, counsel for plaintiff, in making its bill, offered its Exhibit No. 7, apparently the "document" from Shephard mentioned by Mrs. Pierce, and its Exhibit No. 8, a check from defendant. Counsel for defendant objected to the offer of either of the exhibits on the same grounds asserted by defendant in its opposition to the introduction of the aforesaid admission. The trial judge sustained the objections.

Neither of the offered exhibits were attached to or made a part of the bill of exceptions or of the statement of facts. Under the record here presented, we hold that plaintiff has failed to show this Court that the trial court committed reversible error in its rulings complained of by plaintiff in point 11. The point is overruled.

The judgment of the trial court is AFFIRMED.