Edwin Leon HENRY and Roanna
Salas Henry, Appellants

v.

HOUSTON LIGHTING & POWER COM-
PANY and North Houston Pole Line
Corporation, Appellees.

No. 01–95–00361–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 1996.

Rehearing Overruled Dec. 9, 1996.

Robert F. Stein, Houston, for Appellants.

Rayborn C. Johnson, Jr., The Woodland, for Appellees.

Before MIRABAL and WILSON[1], JJ.

OPINION

MIRABAL, Justice.

Plaintiffs/appellants, Edwin Leon Henry and his wife, Roanna Salas Henry, appeal from a summary judgment granted in favor of defendants/appellees, Houston Lighting & Power Company (HL & P) and North Houston Pole Line Corporation (NHPL). We reverse.

The uncontroverted summary judgment evidence shows the following: On July 26, 1990, NHPL, a contractor of HL & P, severed an underground gas line while drilling a hole for a utility pole. NHPL reported the incident to Entex, and plaintiff, Edwin Leon Henry, in his capacity as an employee of Entex, responded to the call. While Henry was working in a hole attempting to repair the gas line, one of his fellow employees shouted "fire" because the area was engulfed in smoke. Henry looked up and saw smoke. In his attempt to escape, Henry jumped out of the hole, and as he rushed through the cloud of smoke, he stumbled and ran into a utility pole, badly injuring his left shoulder.

A few minutes later, an Entex foreman came from a nearby backyard and told Henry that the smoke was caused by a mosquito fogger that was pumping fog into a manhole across the fence from where Henry was working. The gas escaping from the main gas line never ignited.

The crew operating the mosquito fogger was not at the scene prior to the arrival of the Entex crew. The NHPL crew was at the scene when the Entex crew arrived, but they left the scene before Henry's accident occurred.

Plaintiffs filed suit, alleging that defendants were negligent in creating the danger of the ruptured gas pipeline, and that their negligence was the proximate cause of Henry's injuries. The petition specifically alleged the following:

The acts and/or omissions of these Defendants amounting to negligence are as follows:

1. In negligently rupturing the gas pipeline in question, thereby putting the Plaintiff, Edwin Leon Henry, in jeopardy;

2. In failing to adequately and timely notify Entex of the full extent of the drilling of holes for utility poles in the utility easement, to allow for the identification of the location of the natural gas pipeline in issue in advance of drilling;

3. Having discovered that the location of the underground natural gas pipeline was not marked, in failing to wait to drill holes into the utility easement until the true location of such pipeline was identified;

4. In locating the hole to be drilled in a location that had not been checked out for the location of a natural gas pipeline;

5. In ordering the hole to be drilled without taking usual precautions to prevent drilling into a natural gas pipeline;

6. In ordering the hole to be drilled, representing the area to be free of a natural gas pipeline when, in fact, no investigation or an inadequate investigation was made as to the true location of the pipeline[.]

Defendants moved for summary judgment on the following three grounds: (1) as a matter of law, neither NHPL's nor HL & P's action was a proximate cause of plaintiff Edwin Leon Henry's accident or injury; (2) as a matter of law, a new and independent, intervening cause proximately caused his accident and injury; (3) any claims plaintiff Roanna Salas Henry has against NHPL or HL & P are derivative of the claims of plaintiff Edwin Leon Henry, and since he has no legal claim against NHPL and HL & P, she has no legal claim against them, either.

In a single point of error, plaintiffs assert the trial court erred in granting the motion for summary judgment.

■ A defendant is entitled to summary judgment if it disproves an essential element of the plaintiff's cause of action as a matter of law. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex.1995); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). In reviewing a summary judgment, this court considers the evidence in the light most favorable to the non-movant and resolves any doubt in the non-movant's

favor. *Doe*, 907 S.W.2d at 477; *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–549 (Tex.1985).

■ The elements of a negligence cause of action are a legal duty, a breach of that duty, and damages proximately caused by the breach of duty. *Doe*, 907 S.W.2d at 477; *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). Defendants argued in their motion for summary judgment that neither NHPL nor HL & P proximately caused appellant's accident or injury.

■ The components of proximate cause are cause in fact and foreseeability. *Doe*, 907 S.W.2d at 477; *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992). The test for cause in fact is whether the negligent "act or omission was a **substantial factor** in bringing about injury," without which the harm would not have occurred. *Doe*, 907 S.W.2d at 477 (quoting *Prudential Ins. Co. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 161 (Tex. 1995)) (*emphasis added*); *Lear Siegler*, 819 S.W.2d at 472. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition which made the injury possible. *Doe*, 907 S.W.2d at 477; *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex.1995); *see Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968). "The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of resulting injuries … [and] justify the conclusion that such injury was the natural and probable result thereof." *Doe*, 907 S.W.2d at 477 (quoting *Boyd v. Fuel Distribs., Inc.*, 795 S.W.2d 266, 272 (Tex.App.—Austin 1990, writ denied)). Even if the injury would not have happened but for the defendant's conduct, the connection between the defendant and the plaintiff's injuries simply may be too attenuated to constitute legal cause. *Id.; see Allbritton*, 898 S.W.2d at 775; *Lear Siegler*, 819 S.W.2d at 472.

■ In their response to the motion for summary judgment, plaintiffs relied on deposition testimony, interrogatory answers, and admissions that showed the following:

–When a gas main is severed, an extremely dangerous condition is instantly created by virtue of the escape of natural gas from

the severed gas main. When natural gas escapes from a severed gas main, it can ignite or explode very, very easily simply by being exposed to a spark.

–Whenever someone is working in and around escaping natural gas, it is prudent to assume that the presence of smoke is an indication of fire.

–The NHPL foreman testified that when the gas main was severed and natural gas was escaping, NHPL "got our trucks out of there and went down the road a little ways" because of the danger of fire and danger of an explosion. The foreman stated it is good common sense to get away from the gas as fast as you can. He could see the natural gas was blowing about two feet into the air out of the severed gas line.

–The need to escape quickly from a severed gas main is so clear that Entex employees are taught to formulate escape routes in advance.

–Mr. Henry testified that he had been trained to always find the safest escape route before he would enter a hole to repair a gas leak. Before he entered the ditch in the present case, he had determined the safest escape route in the event of an emergency. When he heard "Fire!," he had gas in his clothes and everywhere, and he immediately thought to "just get the hell away from there," and he traveled the safe route he had pre-planned.

Defendants rely, in part, on *Lear Siegler*. In that case, Mr. Perez, while working for the Texas Highway Department, drove a truck pulling a flashing arrow sign behind a sweeping operation on a state highway. *Lear Siegler*, 819 S.W.2d at 471. The function of the sign, which was manufactured by Lear Siegler, was to warn traffic of the highway maintenance. *Id.* Perez had stopped his vehicle on the traveled portion of the road in order to repair the flashing arrow sign, which had malfunctioned. *Id.* The driver of a van, who had fallen asleep at the wheel, struck the sign, which in turn struck Perez and fatally injured him. *Id.*

Perez's survivors and estate sued Lear Siegler on negligence and product liability theories. *Id.* Summary judgment in favor of Lear Siegler was upheld by the Texas

Supreme Court because the operation of the flashing arrow sign would have had no effect on the sleeping driver's conduct. *Id.* Perez would not have been at the place where the collision occurred at the time it occurred if the sign had not malfunctioned, but the court held that these particular circumstances were too remotely connected with Lear Siegler's conduct to constitute legal cause. *Id.* at 472. "Legal cause is not established if the defendant's conduct or product does no more than furnish the condition that makes the plaintiff's injury possible." *Id.* The court reasoned:

> Negligent conduct is a cause of harm to another if, in a natural and continuous sequence, it produces an event, and without the negligent conduct such event would not have occurred. [Citations omitted.] There may be more than one proximate cause of an event. [Citations omitted.] Though we have not adopted the RESTATEMENT (Second) of TORTS in its entirety in Texas, we find its discussion of "legal cause" instructive:
>
> > In order to be legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. * * * [T]his is necessary, but it is not of itself sufficient. The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred. Each of these events is a cause in the so-called "philosophic sense," yet the effect of many of them is so insignificant that no ordinary mind would think of them as causes.
>
> RESTATEMENT (SECOND) OF TORTS § 431, comment a (1965).

819 S.W.2d at 472. The *Lear Siegler* court specifically recognized that *"there may be*

cases in which ... a defendant's negligence exposes another to an increased risk of harm by placing him in a particular place at a given time." *Id.* at 472 (emphasis added). However, under the particular facts of that case, the court concluded the happenstance of place and time was too attenuated from the defendant's conduct for liability to be imposed. *Id.*

The facts of the present case are materially distinguishable from those in *Lear Siegler.* Here, defendants' alleged negligence did not simply cause Henry to be in the wrong place at the wrong time, as in *Lear Siegler;* rather, defendants' acts directly caused the dangerous gas leak that required extreme caution and evacuation in the event of a fire, or any indication of a fire. The connection between defendants' acts and Henry's injuries are not too attenuated to constitute legal cause.

Defendants also rely on *Union Pump Co. v. Allbritton,* 898 S.W.2d at 773. There, a pump at a chemical plant caught fire and ignited the surrounding area. *Allbritton,* 898 S.W.2d at 774. A plant employee assisted in abating the fire. *Id.* After the fire was extinguished, the employee was injured when she slipped off a pipe rack that was wet because of the fire; the employee was still wearing fireman's hip boots and other fire fighting gear when the injury occurred. *Id.* The employee sued the manufacturer of the pump that had caught fire, asserting negligence and strict liability theories of recovery, and alleging that the defective pump was a proximate or producing cause of the employee's injuries. *Id.* The Texas Supreme Court upheld a summary judgment for the pump manufacturer, stating:

> Even if the pump fire were in some sense a "philosophic" or "but for" cause of Allbritton's injuries, the forces generated by the fire had come to rest when [the employee] fell off the pipe rack. The fire had been extinguished, and Allbritton was walking away from the scene. Viewing the evidence in the light most favorable to

Allbritton, the pump fire did no more than create the condition that made Allbritton's injuries possible. We conclude that the circumstances surrounding her injuries are too remotely connected with Union Pump's conduct or pump to constitute a legal cause for her injuries.

*Id.* at 776.

The present case is distinguishable from *Allbritton* by the fact that the crisis created by NHPL was on-going—the dangerous gas leak had not been repaired, and therefore the forces generated by NHPL's acts had not "come to rest."

We conclude that defendants did not prove, as a matter of law, that their alleged negligence was not a "cause in fact" of Henry's injuries.[2]

■ Defendants next argue that, as a matter of law, Henry's injuries were not foreseeable, and therefore defendants' alleged negligent acts did not proximately cause Henry's injuries.

■ Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission. *Doe,* 907 S.W.2d at 478; *Travis,* 830 S.W.2d at 98 (Tex.1992); *Nixon,* 690 S.W.2d at 549–50. The particular accident need not be foreseen, but the injury must be of such a general character as might reasonably have been anticipated. *Nixon,* 690 S.W.2d at 551; *Carey v. Pure Distrib. Corp.,* 133 Tex. 31, 124 S.W.2d 847, 849 (1939).

Defendants rely on *Scurlock Oil Co. v. Birchfield,* 630 S.W.2d 674 (Tex.App.—Houston [1st Dist.] 1981, no writ). There, the evidence established that the defendant had negligently caused an oil spill upon a public road, and the plaintiff, a public employee, wrenched his back while shoveling sand on the oil spill. *Birchfield,* 630 S.W.2d at 677. This Court noted that the defendant could have reasonably foreseen that other drivers upon the roadway, who had no knowledge of the oil spill, might receive injuries. *Id.*

---

2. We note that defendants admit in their brief that "leaking gas is a dangerous condition and, had Henry been burned or killed upon explosion or ignition of the leaking gas or had he been overcome by gas fumes, his injury or death may well have been a natural and probable result of NHPL's alleged negligent act."

However, we held that "it cannot be said that [the defendant,] as a person of ordinary intelligence and prudence, should have anticipated that [the plaintiff] would sustain an injury by wrenching his back while performing the very job he was employed to do, i.e., the placement of sand on the oil spill." *Id.*

In *Birchfield,* it was relevant that the forces involved in or generated by the oil spill had come to rest, and no one was in any real or apparent danger from them. Oncoming traffic had been flagged down and diverted to the portion of the roadway that was free from the oil spill. 630 S.W.2d at 676. The plaintiff's injury was suffered during the routine clean-up of the oil spill. *Id.* The present case is clearly distinguishable. Here, the natural gas was still shooting about two feet into the air from the severed gas line at the time of Henry's injury—the forces generated by the gas leak had clearly not "come to rest". There was evidence that it was certainly foreseeable that an emergency crew would be dispatched to fix the gas leak; that the crew would be in danger of serious injury or death as they attempted to repair the highly flammable gas leak; that the crew would, therefore, naturally be apprehensive about their safety, and that any indication of the presence of smoke or sparks or fire would cause immediate flight from the area of the gas leak; and that in the process of such immediate flight, crew members might be injured.

Defendants also rely on *Snellenberger v. Rodriguez,* 760 S.W.2d 237 (Tex.1988), where the court held that a police officer's collapse while controlling a crowd at an auto-pedestrian accident scene, and his subsequent death from a heart attack, were not a foreseeable result of the negligence of the driver of the vehicle involved in the accident. *Id.* at 237–38. Again, the forces involved in or generated by the auto-pedestrian accident had come to rest. The police officer was notified after the accident had occurred, and he arrived at the scene to control the crowd and perform post-accident duties. *Id.* The *Snellenberger* case is clearly distinguishable from the present case.

Defendants additionally cite *City of Bishop v. South Texas Elec. Co-operative, Inc.,* 577 S.W.2d 331 (Tex.Civ.App.—Corpus Christi 1979, no writ). However, in that case the issue of foreseeability went to the jury, and the jury found the injury was not foreseeable; on appeal, the court reviewed the sufficiency of the evidence to support the jury's finding. Here, we apply a different standard of review, because the trial court granted a summary judgment in this case. Therefore, *City of Bishop* is not helpful.

When considering the question of "foreseeability", the key inquiry is whether the injury is of such a general character that it might reasonably have been anticipated; the particular accident need not be foreseen. *Nixon,* 690 S.W.2d at 551. We hold that defendants did not prove, as a matter of law, that Henry's injury was not foreseeable.

■ Defendants next assert that, as a matter of law, a new and independent, intervening cause proximately caused Henry's accident and injury, and therefore defendants are not liable. Defendants argue that Henry's injury was caused by the chance operation of a mosquito fogging machine in the area of the gas leak, combined with the fellow employee yelling "Fire!," and Henry's failure to remove his goggles as he rushed out of the ditch.

■ Intervention of an unforeseen cause of a plaintiff's injury does not necessarily mean that there is a new and independent cause of such a character as to constitute a superseding cause which will relieve the defendant of liability. *Bell v. Campbell,* 434 S.W.2d 117, 121 (Tex.1968); *Teer v. J. Weingarten, Inc.,* 426 S.W.2d 610, 614 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.). The intervening cause of the plaintiff's injury, even if unforeseeable, may be a concurring cause if the chain of causation flowing from the defendant's original negligence is continuous and unbroken. *Bell,* 434 S.W.2d at 121. The intervening cause, if it is a concurring cause, does not break the chain of causation between the defendant's negligence and the plaintiff's injury simply because the intervening cause was unforeseeable. *Id.*

Defendants argue that *Bell v. Campbell* supports the validity of the summary judg-

ment in the present case. In *Bell,* two automobiles collided on a highway, and as a result, a trailer became disengaged from one of the vehicles and overturned in the north lane of the highway. *Id.* While three men were attempting to remove the trailer from the highway, a third vehicle struck them. *Id.* The issue on appeal was whether the jury should have received a jury question inquiring whether the negligence of the drivers of the first two vehicles was a proximate cause of the death of a man who was hit by the third vehicle as he was attempting to remove the trailer. *Id.* The supreme court held that no such jury issue was raised by the evidence, reasoning:

> The active and immediate cause of the second collision ... was an entirely independent agency, [the third vehicle.] All forces involved in or generated by the first collision had come to rest, and no one was in any real or apparent danger therefrom.
>
> . . . .
>
> All acts and omissions charged against [the drivers of the first two vehicles] had run their course and were complete. Their negligence did not actively contribute in any way to the injuries involved in this suit.

434 S.W.2d at 120, 122.

As with the issues of "cause in fact" and "foreseeability," the issue of "intervening cause" as a bar to a defendant's liability is dependent on whether the forces generated by the defendant's negligence have "come to rest." As we have already discussed, the present case is distinguishable from *Bell,* and defendants' other cases, in that here, at the time Henry was injured, the forces generated by NHPL's acts had *not* "come to rest."

We conclude that defendants did not prove, as a matter of law, that the intervening cause here was a *superseding* cause, rather than a *concurring* cause.

Because defendants failed to prove their entitlement to summary judgment as a matter of law, we sustain plaintiffs' sole point of error.

We reverse the summary judgment and remand the case to the trial court.