Howard CASTILLE, Appellant,

v.

SOUTHERN IRON AND METAL and Dick Utterback, Appellees.

No. 09–93–197 CV.

Court of Appeals of Texas, Beaumont.

Submitted May 19, 1994.

Decided Oct. 20, 1994.

D'Juana J. Parks, Provost & Umphrey, Beaumont, for appellant.

James R. Old, Jr., William D. Noel, Andrews & Kurth, Houston, Daniel C. Ducote, Richard L. Scheer, Strong, Pipkin, Nelson & Bissell, Beaumont, for appellees.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

BROOKSHIRE, Justice.

Appellant, Howard Castille, timely appeals from the granting of a motion for summary judgment adverse to him. The paramount issue is the application and applicability of the "borrowed servant doctrine" to the record before us. Castille pleaded that on or about April 2, 1991, he was an employee of ELH Contracting, Inc. (ELH). He was working at the plant of Southern Iron and Metal (Southern) on College Street in Beaumont. A second defendant, Dick Utterback (Utterback) allegedly drove a front-end loader into a half-inch plate of steel, knocking the plate of steel over and onto Castille causing severe, serious injuries to Castille's head, neck, back, arms, legs, and other parts of his body.

Castille pleaded that while he was on Southern's premises he suffered serious injuries as a direct result of a dangerous condition on the premises of Southern. Castille contends that Southern should have known of such dangerous conditions and that Southern's negligence and lack of attention in failing to remedy such dangerous conditions caused or contributed to cause the serious bodily, personal injuries sustained by Castille. Castille additionally averred that Southern and its agents, servants, and employees, negligently caused and also negligently permitted such dangerous conditions to exist in spite of the fact that the defendants and Southern's agents and employees knew, or in the exercise of ordinary care, should have known of the existence of the said dangerous conditions and that there was a likelihood of an individual being injured as the plaintiff was later injured.

Castille specifically pleaded that Southern was guilty of acts, wrongs, and omissions, each of which constituted negligence. He

pleaded five separate allegations of negligence.

As to Utterback, Castille pleaded that Utterback was also guilty of negligence in failing to operate the front-end loader in a safe manner, in failing to maintain a proper lookout, and in several other acts of commission and omission amounting to negligence. Castille alleges that these various and sundry acts and omissions were a proximate cause of his personal injuries and damages.

The defendants answered and pleaded several defenses including a general denial, that Castille was guilty of negligence, that plaintiff's injuries were caused by the negligence of third persons over which the defendants had no control and that the incident and plaintiff's injuries and damages, if any, were the result of an unavoidable accident.

The defendants specially pleaded that Southern was a subscriber under the Texas Workers' Compensation law and that Castille was a borrowed servant and that as a result of plaintiff's status that his sole right to recovery is restricted solely to the benefits of the Texas Workers' Compensation law. The defense maintains that Castille was the borrowed servant of Southern who was a subscriber and thus, Castille had no right of action against Utterback who was a fellow employee of a subscribing employer. The issues were thus joined by the pleadings.

 At the threshold we are met with the standards or criteria of review by an intermediate appellant court in a summary judgment proceeding. A comprehensive and inclusive statement of the standards of review as applicable here is set out clearly in *Nixon v. Mr. Property Management,* 690 S.W.2d 546 (Tex.1985). We quote from *Nixon:*

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

2. In deciding whether or not there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the non-movant *and any doubts resolved in his favor.* (emphasis added)

*Id.,* at 548–549; *Turboff v. Gertner, Aron & Ledet, Inv.,* 763 S.W.2d 827, 829 (Tex.App.— Houston [14th Dist.] 1988, writ denied). Moreover, the usual presumption that the judgment is correct does not apply. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965).

Justice Doggett speaking and writing for an unanimous Supreme Court of Texas in *Acker v. Texas Water Com'n,* 790 S.W.2d 299, 302 (Tex.1990), wrote and held as follows:

In the review of a summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Evidence favorable to the non-movant will be taken as true when deciding whether a material fact issue exists. All reasonable inferences must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Under this record it is significant and noteworthy, as Justice Doggett specifically held, that any and all doubts in this matter must be resolved in favor of Castille and against the defendants.

 In the briefest manner, Castille maintains that he was very seriously injured when he was hit by a one-half inch plate of steel which had been actually knocked over by a front-end loader that was driven and operated by Utterback, an employee of Southern. Castille stoutly maintains he was an employee of ELH. ELH was alleged to be a leasing agent for Busby Maintenance and Construction Company (Busby).

The defendants' motion for summary judgment can be summed up in a fair and balanced manner by pointing out that the defendants took the position that the summary judgment evidence conclusively established that: (1) Howard Castille was at the time of

his alleged accident a borrowed servant of Southern, a division of Commercial Metals Company; and (2) Southern Iron was a "subscriber" as defined in the Texas Workers' Compensation Act (TEX.REV.CIV.STAT.ANN. art. 8309 § 1, et. seq.) on the very occasion in question. To this motion for summary judgment Castille made a lengthy response.

Castille swore by deposition that he was working for Busby and he got hooked up with Busby by putting in his application and his resume and that his employer Busby sent him over to Southern's place of business. The sworn testimony of Castille demonstrated that Utterback was Southern's employee who was out there and had the day-to-day overseeing of the yard and the plant and the operation of a machine known as a shredder. At times, Utterback would give Castille additional instructions as to the shredder's operation. Castille stated that he was employed by and he was working for Busby but he was also obliged from time to time to take orders from any supervisor at the plant. Castille avows that he received his paychecks directly from Busby initially and then later he received paychecks from ELH and Staff–Tek, being leasing agents of Busby.

At the time of the occurrence Castille was receiving paychecks from Staff–Tek but not from Southern. There is also summary judgment proof that Castille's supervisor was one Lee Hill, an employee of Busby. These contentions were borne out and raised by the deposition testimony. One answer of Castille was to the effect:

A. Yeah, Dick—Dick Utterback was a supervisor for Southern Iron. But Lee Hill is my main supervisor. I was put over there to do a job by Lee Hill.

Castille said that if certain desirable positions came open and if a temporary worker could qualify, then maybe the worker could attain that advantageous position; but, nevertheless, the new arrangement would have to go to Lee Hill for his approval.

The testimony of Larry E. Nance is in the record before us. Mr. Nance's sworn evidence revealed a contract in existence between Busby and Southern which was without dispute in effect at the time of Castille's alleged cause of action. Mr. Nance's sworn testimony by deposition in part reads:

Q Mr. Nance, the next thing we have is Exhibit No. 3 to your deposition and it's entitled "Busby Maintenance and Construction Company" with a date of February 20, 1986 and you also had an opportunity to review it briefly before your deposition; is that correct?

A Yes.

Q And it is signed off on the last page by Mr. R.O. Busby dated March, 1986, and signed by Southern Iron with what I believe to be your signature as plant manager; is that correct?

A That's correct.

Q Was this the contract for Busby Maintenance and Construction Company employees that was in effect at the time of Mr. Castille's accident in 1991?

A I believe it is, yes, sir.

The agreement between Busby and Southern contained, in relevant, significant part, unambiguous language such as:

All employees furnished to Southern Iron & Metals will be the sole employees of Busby Maintenance & Construction, Inc. (Busby Company), and any orders or directives given to the employees will be considered as given to and by Busby Company. Should Southern Iron & Metals desire to hire any Busby Company employee, the employee will be released by Busby Company upon Southern Iron & Metals' request, as soon as a replacement can be hired.

After Castille's alleged accident and personal injuries, a form was filled out. A Busby Maintenance and Construction Company injury form on Busby letterhead was made and completed and the claim was turned in to Staff–Tek's workers' compensation insurance carrier which was identified as Houston General, but not to Southern's carrier. Southern's carrier was a different compensation insurance carrier.

A printed form is in the record and the top, main logo reads:

Busby Maintenance and Construction Company, P.O. Box 446, Dayton, Texas.

In part of the form the instruction is to describe what took place and what caused the making of the investigation. It lists Howard Castille as a Shredder on the day shift. The date is 4–2–91. The printed form lists:

Job: Shredder operator

How long on this job? 1–½ yrs

What Happened? Cover plate over air compressor broke off and fell to ground, while setting a welding machine on the ground, Howard was standing at the side of the cover when it broke loose and was hit with the plate.

Also printed on the form:

Why did it happen? Bucket of the loader hit the cover and broke it loose from the wall.

Next question on the form:

What should be done? Make sure everyone is away until item is on the ground.

We recognize that Castille is an interested party-plaintiff in giving his deposition testimony. Castille is desirous of recovering large sums of monies. But Castille does not control the actions of ELH or Staff–Tek. Nor does Castille control the course of action taken by Busby. Castille didn't draft or dictate the agreement between Busby and Southern covering and regulating the status of Busby's personnel while in Southern's plant. That status is clearly fixed and it is unambiguous for summary judgment purposes.

We determine that the documentary evidence eviscerates the granting of the summary judgment. Castille was not in a position to control, dictate, or conclusively influence Busby's report employing Busby's injury form which form was turned into Staff–Tek's workers' compensation insurance carrier. We think the documentary evidence raises genuine issues of material facts for summary judgment purposes—it really doesn't take much in view of Justice Doggett's proper pontification about doubts. Since Busby made the injury report in detail and since Busby determined what should be done concerning the injury and its report as worded and since Staff-tek's insurance carrier paid Castille workers' compensation benefits for a

long period of time; then in our view, these documentary evidences and written, reported facts raise crucial, determinative, genuine issues as to material facts as to the true employee and employer relationship concerning Castille. Likewise genuine issues concerning material facts were raised as to the exact legal status of Castille and as to which entity was his actual employer.

Busby determined not only what happened to Castille but why it happened and what should be done after it happened. Busby circulated written documents dealing with these matters. Busby proceeded to take additional actions because there is also a question on the form reading: "What have you done thus far? Advised everyone on situations such as this." Busby proposed remedies.

Notable and of significance is a paragraph in the agreement and contract between Busby Maintenance and Construction Company, Inc., signed by R.O. Busby, II, President, and agreed and accepted by Southern Iron and Metals by and through Larry Nance, Plant Manager. The agreement provides that Busby Company will pay all state and federal payroll taxes and will provide full workers' compensation, federal old-age benefits, and state unemployment insurance.

The agreement, being a formal, written contract, also contained a lengthy indemnity provision whereby the Busby Company (in case of personal injury or death of any Busby Company employee) shall at all times protect, indemnify, defend and hold harmless Southern from all losses, damages, including exemplary and punitive damages, liability, claims, causes of action, suits, judgments, costs, attorneys' fees, and other expenses. Apparently Busby had some exposure by way of this indemnity and hold harmless agreement given to Southern.

Further, Castille had received worker's compensation benefits for some lengthy period of time after this alleged occurrence from Houston General Insurance Company, being the workers' compensation carrier for Staff–Tek. It is true that after suit was filed that Mr. Busby executed an affidavit stating that Castille was an employee of Southern. Mr.

Busby's deposition was taken at a time after the affidavit was signed. At deposition, Mr. Busby acquiesced in the concept that the 1986 agreement applied to employees that had been leased back through Staff–Tek. Busby also acknowledged that he would have let Castille go if, but only if, Southern had told him that they wanted to hire Castille as Southern's employee. Busby was asked if Southern had actually considered hiring Castille. We find in the record:

Q Was Mr. Castille ever released by Busby Maintenance and Construction Company and allowed to be hired as an employee of Southern Iron?

A Well, they were planning on-on hiring him at one time. And we would have released him for them to hire him, but they didn't hire him.

Busby also testified that he (Busby) maintained the right to fire Castille or take him off the job. It is conceivable that Mr. Busby's somewhat possibly large, inconsistent statements were triggered by reason of Busby's indemnity and hold harmless contractual agreement in favor of Southern.

Applying the well-established standards of appellant review in an appeal of this nature, we think that the record reveals genuine issues of material facts concerning the status of Castille, who was Castille's actual employer, which entity reserved the right to control Castille, which entity had the right to hire or fire Castille or transfer Castille from one job with one entity to a different job with another entity. Apparently after the alleged accident and alleged injuries to Castille, at least some of the parties were willing to "unborrow" Castille and thus, Castille's status was changed to that of a recently "unborrowed servant"—at least for summary judgment proceedings. Doubts exist as to the legal and correct employer-employee relationship. Thus, Castille gets his full day in court.

Therefore, we are constrained to reverse the judgment and remand the cause of action for a full trial on the merits.

As an additional ground for our decision, we have found reversible error and having found reversible error, in the interest of justice, we exercise our broad discretionary powers in the furtherance of justice and hereby reverse the judgment below and remand the cause of action for a trial on the merits.

REVERSED AND REMANDED.