Beth Ann HALL, Individually and as Representative of the Estate of Arthur Hall, Deceased, Appellant,

v.

William K. HUFF, M.D., and Good Shepherd Hospital, Inc., D/B/A/ Good Shepherd Medical Center, Appellees.

No. 06–97–00017–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 15, 1997.

Decided Oct. 10, 1997.

Rehearing Overruled Dec. 9, 1997.

---

Linda Marshall, Houston, for Hall.

Don W. Kent, Ken W. Good, Cowles & Thompson, Tyler, for Huff.

T. John Ward, Brown McCarrol & Oaks Hartline, Longview, for Good Shepherd.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

GRANT, Justice.

Beth Ann Hall, on behalf of the estate of her deceased husband, Arthur Hall, appeals an adverse summary judgment granted in her medical malpractice suit against William K. Huff, M.D., and Good Shepherd Hospital, Inc. (GSH). She complains that the trial court erred (1) in granting Huff's motion for summary judgment on her negligent treatment claim because the motion only addressed her wrongful death claim, (2) in granting Huff's motion for summary judgment on the wrongful death claim because genuine issues of material fact existed, and (3) in granting summary judgment for GSH because genuine issues of material fact remained.

On January 11, 1993, Hall sustained an elbow injury and sought treatment from Dr. Huff, a physician who had treated Hall in past years for chronic renal disease. When Hall's condition worsened, Huff admitted Hall on March 5 to Marshall Memorial Hospital (MMH) for suspected pneumonia. Hall was under Huff's care during his nine-day stay at MMH. Within three days of his admittance to the facility, test results showed that Hall had developed signs of acute renal failure. In spite of these results, Huff treated Hall only for pneumonia and the elbow injury. That treatment included drugs that were contraindicated for patients with renal failure. After significant renal problems began to surface, and because MMH did not perform dialysis procedures, Hall was transferred to GSH, where his renal condition improved. On March 23, Dr. Paul Guentert

inserted a cardiac catheter in Hall's chest to allow for consistent vein access. Dr. Victor Hrehorovich, Hall's expert witness, testified that Guentert incorrectly inserted the catheter too far, thereby perforating Hall's heart, causing his death days later by cardiac tamponade. Although the nurses' notes on the days following the improper insertion reflected symptoms of cardiac tamponade, the nurses failed to diagnose or treat Hall for it. Additionally, Hrehorovich testified that despite several label warnings printed on the catheter manufacturer's package insert cautioning medical personnel to be alert to cardiac tamponade, neither Guentert nor the attending nurses discovered or treated the cardiac tamponade condition until March 26, the day Hall died.

Hall asserts that Huff was negligent because he failed to properly diagnose and treat her husband's renal failure condition and delayed her husband's transfer to GSH, thereby leaving him in a weakened condition at the time of transfer. She further contends that GSH was negligent because it improperly monitored, staffed, and trained its nursing staff with regard to proper catheter placement and proper assessment, intervention, and diagnosis of cardiac tamponade. She asserts that because the nursing staff did not provide emergency treatment when cardiac tamponade set in, the staff wasted Hall's last chance for recovery in delaying and performing what should have been an unnecessary catheterization procedure. Hall contends that it was the combined negligence of the physicians and nurses mentioned above that led to Hall's injuries and death.

## Standard of Review

■ Summary judgment is appropriate when the summary judgment evidence shows that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in any other response."[1] The question on appeal is not whether the summary judgment proof raises a fact issue, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action.[2] When deciding whether a disputed issue of material fact precludes summary judgment, an appellate court takes as true evidence favorable to the nonmovant, indulges every reasonable inference in favor of the nonmovant, and resolves all doubts in the nonmovant's favor.[3] The usual presumption that the judgment is correct does not apply to summary judgments.[4]

■ To prevail on a medical malpractice cause of action, the plaintiff (Hall) must show four elements: (1) a duty by the physician to act according to certain standards; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury.[5] The defendant movant in summary judgment must conclusively disprove one element of the plaintiff's cause of action in order to prevail.[6] In the present case, the issue is causation.

## Wrongful Death and Survival Statutes

■ At common law, a plaintiff could not bring a cause of action for wrongful death.[7] Also, a cause of action for personal injury could not survive to an heir of a deceased tort victim.[8] The legislature abol-

1. Tex.R. Civ. P. 166a(c).

2. Gibbs v. General Motors Corp., 450 S.W.2d 827, 828 (Tex.1970).

3. Nixon v. Mr. Property Management, 690 S.W.2d 546, 548–49 (Tex.1985).

4. Castille v. Southern Iron and Metal, 885 S.W.2d 653, 655 (Tex.App.—Beaumont 1994, no writ); see Montgomery v. Kennedy, 669 S.W.2d 309, 311 (Tex.1984).

5. Fought v. Solce, 821 S.W.2d 218, 219 (Tex. App.—Houston [1st Dist.] 1991, writ denied).

6. Gardner v. Best Western Int'l, Inc., 929 S.W.2d 474, 479 (Tex.App.—Texarkana 1996, writ denied).

7. Witty v. American Gen. Capital Distribs., Inc., 727 S.W.2d 503, 504 (Tex.1987).

8. Kramer v. Lewisville Memorial Hosp., 858 S.W.2d 397, 403 (Tex.1993).

ished these common-law rules when it passed the Wrongful Death Act and Survivorship Statute. Today, these causes of action are permitted solely by virtue of these statutes.

The pertinent sections of the Texas Wrongful Death Act as they apply to the present case state the following:

(a) An action for actual damages arising from an injury that causes an individual's death....

(b) A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default.[9]

The relevant portions of the Survival Statute provide the following:

(a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.

(b) A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person.[10]

### Hall v. Huff: Survival Statute

Hall contends that the trial court erred in granting summary judgment rather than a partial summary judgment because, while the motion for summary judgment included the Wrongful Death Act claim, it excluded the Survival Statute claim.

■ Grounds for summary judgment must be expressly presented with specificity in the summary judgment motion itself.[11] Stating the grounds with specificity defines the issues and gives the nonmovant adequate notice for opposing the motion. The judgment must stand or fall on the grounds specifically and expressly set forth in the motion, not in

a supporting brief or accompanying summary judgment evidence.[12]

■ Huff's Motion for Summary Judgment was based solely on an "inferential rebuttal issue of new and independent cause" defense. The phrase "new and independent cause" is defined as "an act or omission of a separate and independent agency which destroys the causal connection between the negligent act or omission of the defendant and the injury complained of, and thereby becomes in itself, the immediate cause of such injury."[13] In his motion, Huff asserted that Hall's injuries and death were the result of an independent cause, namely the catheter's perforation of the heart, an act performed after Huff's care had ended and after Hall was transferred to another hospital. Although this assertion clearly addresses the proximate causation issue in the Wrongful Death claim, it fails to negate the Survival claim, which would provide for injuries suffered before Hall's transfer to GSH.

In the search for *any* language mentioning the Survival Statute claim, Huff's motion merely reiterates Hall's allegation that Huff was negligent in treating Hall and providing him with substandard care. Huff's Motion for Summary Judgment is conclusory in nature and does not discuss with any specificity how the new and independent cause of the improper catheter placement destroys Huff's liability for improperly diagnosing, treating, and delaying Hall's referral to GSH, and the injuries ensuing therefrom.

Also, Huff's interpretation of the "new and independent" definition implies that Hall's death is the only injury, not any possible pain and suffering that may have been caused by Huff's alleged negligent acts. Huff's analysis contemplates that an independent force (the catheter perforation), not any action or inaction by Huff, is responsible for all injuries, including those injuries sustained while un-

---

9. Tex. Civ. Prac. & Rem.Code Ann. § 71.002 (Vernon 1997).

10. Tex. Civ. Prac. & Rem.Code Ann. § 71.021 (Vernon 1997).

11. Tex.R. Civ. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 338–41 (Tex. 1993) (stating that if grounds are so obvious from

summary judgment proof presented, then requiring movant to state them in motion should not be burdensome task).

12. *McConnell*, 858 S.W.2d at 340–41.

13. *Young v. Massey*, 128 Tex. 638, 101 S.W.2d 809 (1937).

der Huff's exclusive care. However, under Hall's survival action, the "injury complained of" is the pain and suffering and mental anguish that her husband sustained *while* under Huff's care *before* he was transferred to GSH, not any injuries suffered after the catheter pierced his heart, including his death.

Because the grounds for summary judgment must be expressly raised in the motion itself, and here Huff did not raise a ground with sufficient specificity to negate the survival claim, a partial summary judgment was proper. This point of error is sustained.

### Hall v. Huff: Wrongful Death

Hall asserts that granting the motion for summary judgment on the Wrongful Death Act claim was error because a genuine issue of material fact exists and because Huff's "inferential rebuttal" defense is insufficient to support summary judgment. Specifically, she contends that before liability can be discharged, Huff must first prove in his "inferential rebuttal" assertion that the new cause was *superseding*, rather than merely *intervening*, and he has not provided that proof.

The Texas Wrongful Death Act authorizes claims only for actions that *cause* death.[14] A negligent act or omission is a cause of harm to another if, in a natural and continuous sequence, it produces an event, and without the negligent act or omission that event would not have occurred.[15] In other words, the Wrongful Death Act bars recovery unless Huff's actions or inactions were the proximate cause of Hall's death.

Proximate causation embraces two concepts, both of which must be present: the cause in fact of an event and the foreseeability of that event.[16] "Cause in fact" is an act or omission that was a substantial factor in bringing about the injury, and without it, harm would not have occurred.[17] "Foreseeability" means that the actor, as a person of ordinary intelligence and prudence, should have anticipated the dangers that his negligent act created for others.[18] The actor need not know of the precise manner in which the injury will occur, but the injury must be of such general character as might reasonably have been anticipated.[19] Because the foreseeability prong of proximate cause is inherently a matter to be left to the fact finder,[20] it can become somewhat problematic for summary judgment review.

To begin, Huff's theory of "new and independent cause" is not an affirmative defense; it is but one element to be considered by the fact finder in determining whether proximate cause exists.[21] In light of the fact that it is not an affirmative defense, the defendant movant (Huff) has the burden to establish entitlement to summary judgment by conclusively proving all elements of his defense as a matter of law.[22] While Huff does not expressly dispute his negligence in his motion, he attempts to protect himself by maintaining that his summary judgment proof conclusively establishes that his own actions or inactions did not proximately cause Hall's death. Specifically, Huff asserts that although Hrehorovich, who was Hall's expert witness and whose testimony was the foundation for Huff's summary judgment proof, was critical of Huff's medical treatment of Hall, Hrehorovich conceded that Hall's condition improved once he was transferred to GSH. Further, Hrehorovich testified that but for the cardiac catheter perforation, Hall would not have died. In sum, Huff relies on an

**14.** *Kramer*, 858 S.W.2d at 404.

**15.** *Id.* (citing *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991)).

**16.** *Farley v. M M Cattle Co.*, 529 S.W.2d 751, 755 (Tex.1975).

**17.** *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex.1992).

**18.** *Travis*, 830 S.W.2d at 98.

**19.** *Henry v. Houston Lighting & Power Co.*, 934 S.W.2d 748, 753 (Tex.App.—Houston [1st Dist.] 1996, writ denied).

**20.** *Taylor v. Southwestern Bell Tel. Co.*, 483 S.W.2d 330, 332 (Tex.Civ.App.—El Paso 1972, no writ).

**21.** *Dallas Ry. & Terminal Co. v. Bailey*, 151 Tex. 359, 250 S.W.2d 379 (1952).

**22.** Tex.R. Civ. P. 166a(c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986).

inference that because Guentert's misplacement of the catheter was the ultimate cause of death, there can be no other additional, concurring, or abetting fault. In relying on a defensive claim of new and independent cause, Huff must prove as a matter of law that his negligent care was *not* a cause in fact and was not a foreseeable cause of Hall's death. Huff has not offered that proof.

Although the main inquiry is whether the intervening conduct was reasonably foreseeable, three possibilities remain: (1) the new and independent cause, which by definition means not reasonably foreseeable and destroys the causal connection; (2) the intervening cause that is reasonably foreseeable, which does not destroy the causal connection, and; (3) the intervening cause, though unforeseeable, which is a concurring cause and which does not destroy the causal connection.

In this case, Huff relies on the first possibility. Meanwhile, Hall asserts that Huff has neither conclusively proven the existence of that possibility nor proven that the third possibility is not true.

 To provide conclusive proof, Huff would have to establish that the intervening cause was a superseding cause, not a concurrent cause. Although the effectual differences between the two classifications are paramount when determining causation and liability, Huff has not expressly designated or discussed which type of intervening cause was involved. A superseding cause [23] is the only means by which the first negligent defendant can break the chain of causation and be relieved of liability.[24] The new and independent cause must be one incapable of being foreseen by the original wrongdoer in the exercise of ordinary care.[25] However, the fact that an unforeseen cause of an injury intervenes does not necessarily mean that the new and independent cause is of such a character as to constitute a superseding cause.[26] Courts have considered the following factors when determining whether an intervening force is a superseding cause of harm:

(a) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the actor's negligence;

(b) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

(c) the fact that the intervening force is operating independently of any situation created by the actor's negligence, or, on the other hand, is or is not a normal result of such a situation;

(d) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

(e) the fact that the intervening force is due to an act of a third person which is wrongful toward the other and as such subjects the third person to liability to him; and,

(f) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.[27]

Huff's Motion for Summary Judgment does not mention or apply these factors to the present case. Further, he does not conclusively prove that the intervening cause was unforeseeable. Therefore, the motion's implication and conclusion is that the intervening cause is superseding because of the term "new and independent cause."

 Conversely, as a general rule of *concurrent* causation, all actors whose negli-

---

**23.** Superseding cause is defined as "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." RESTATEMENT (SECOND) OF TORTS § 440 (1965).

**24.** *See Henry,* 934 S.W.2d at 753 (discussing liability associated with concurrent and superseding causes).

**25.** *Meinen v. Mercer,* 390 S.W.2d 36, 41 (Tex.Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.).

**26.** *Henry,* 934 S.W.2d at 753–54; *Teer v. J. Weingarten, Inc.,* 426 S.W.2d 610, 614 (Tex.Civ. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.).

**27.** *Chemical Exp. Carriers, Inc. v. French,* 759 S.W.2d 683, 686 (Tex.App.—Corpus Christi 1988, writ denied).

gent actions or inactions contribute to the injury, proximately causing the injury, are liable.[28] An intervening cause, even if unforeseeable, may be a concurring cause if the chain of causation flowing from the defendant's original negligence is continuous and unbroken.[29] To determine whether an intervening cause bars a defendant's liability depends on whether forces generated by that defendant's negligence have already ceased.[30]

■ When a movant for summary judgment has negated an essential element of the nonmovant's cause of action, the burden is on the nonmovant to produce controverting evidence raising an issue of fact as to that negated element.[31] In the present case, Hall contends that the intervening cause was concurrent and not superseding, and points to summary judgment evidence showing that (1) while under Huff's care, Hall's peripheral veins were in constant use for IV application, and (2) had Hall been transferred to GSH earlier, the GSH staff would have been able to manage the renal failure more easily. Further, Hrehorovich testified that Hall's physical condition on admission to GSH was far worse than it would have been had Huff rendered proper treatment to Hall. Hrehorovich stated, "Because of his worsened condition, it became necessary for Hall to undergo the placement of the catheter. Such placement would not have been necessary with proper care and timely referral." In sum, Hrehorovich testified that the constant access to Hall's veins, along with the prolonged hospital stay, predisposed Hall to receiving the subsequent perforation. This predisposition implies that the chain of causation was continuous and unbroken.[32]

In light of the above discussion and because Hall, as the nonmovant, is entitled to all permissible inferences, Huff has not conclusively proven that Hall's death was an unforeseeable, superseding event as a matter of law, nor has he asserted or conclusively proven that his undisputed negligence was not a concurring cause of Hall's death. Because Huff's summary judgment proof has not established as a matter of law that he did not proximately cause Hall's death, this point of error is sustained.

## Hall v. GSH: Expert Testimony

Hall asserts that the trial court erred in granting summary judgment because a genuine issue of material fact remains. Specifically, she contends that the court erred in striking the testimony of Hrehorovich, her sole source of adverse evidence against GSH, one day after it granted GSH's Motion for Summary Judgment. She contends that Hrehorovich was a proper expert witness, the court erred in disregarding his testimony, and the timing of the court orders concerning the summary judgment motion and the motion to strike stripped away any opportunity for her to designate and rely upon a substitute expert witness.

The trial court signed the Agreed Pretrial Scheduling Order that included an April 9, 1996 deadline within which Hall was to list the names of all expert witnesses she expected to have testify. Of the five expert witnesses Hall designated, only Hrehorovich was to offer testimony adverse to GSH.[33] After GSH complained of Hrehorovich's "bare bones" report in its first motion to strike, the court ordered a report from Hrehorovich, outlining his opinions. On August

**28.** *Travis,* 830 S.W.2d at 98.

**29.** *J. Weingarten,* 426 S.W.2d at 614.

**30.** *Henry,* 934 S.W.2d at 754.

**31.** *Bradford v. Alexander,* 886 S.W.2d 394, 396 (Tex.App.—Houston [1st Dist.] 1994, no writ).

**32.** *See Harvey v. Stanley,* 803 S.W.2d 721, 724 (Tex.App.—Fort Worth 1990, writ denied)(finding proximate cause existed when first physician negligently treated patient and could have foreseen outcome of second physician's actions); *Brownsville Medical Center v. Gracia,* 704 S.W.2d 68, 73–74 (Tex.App.—Corpus Christi 1985, writ ref. n.r.e.) (holding that concurring cause and foreseeability existed and chain of causation was continuous and unbroken when first physician's failure to properly diagnose and treat patient resulted in delay of treatment by second physician, during which time patient's condition had become aggravated).

**33.** Hall designated Teresa Brookshire, R.N. as an expert witness, but later withdrew her name after failing to produce a report as was required by the Agreed Pretrial Scheduling Order.

16, 1996, approximately one month after Hrehorovich was deposed with respect to his opinions, GSH filed its Second Motion to Strike Expert Witness, which included a Motion for Summary Judgment. In these motions, GSH asserted that Hrehorovich was not qualified to testify as an expert witness and without his testimony, summary judgment was proper. On August 22, Hall filed its Motion for Leave to Designate Expert Witness or, alternatively, a Motion for Continuance and Motion to Amend Pretrial Scheduling Order. Although the court denied these motions on August 28, the additional testimony Hall attempted to offer in her Motion for Leave included no opinions concerning GSH's potential liability. On September 16, the court granted GSH's Motion for Summary Judgment after examining the pleadings, the summary judgment evidence, which still included Hrehorovich's testimony, and the parties' arguments. The next day the court granted GSH's Motion to Strike Expert Witnesses.

Hall asserts that the court should have considered Hrehorovich's testimony when it granted GSH's summary judgment on September 16 because Hrehorovich was not struck as an expert until the day following the granting of summary judgment, September 17. The summary judgment order was based on an examination of the pleadings, arguments of counsel, and summary judgment evidence, which included Hrehorovich's testimony. In the next day's order striking Hrehorovich's testimony, the court stated that "Hrehorovich [was] not qualified to render expert opinions regarding nursing standards of care." Just because the order was signed one day after summary judgment was granted does not mean that the court was required to give Hrehorovich's testimony probative weight when the court considered and determined the expert was not shown to be qualified to express an opinion concerning nursing standards of care.

Hall contends that she did not designate other expert witnesses against GSH because no ruling had been made on the motion to strike Hrehorovich's testimony at the time when GSH's summary judgment motion was granted. Because no ruling had yet been made, Hall asserts that she was unaware of the necessity to offer additional or substitute evidence before the April 9 deadline to designate experts, a deadline that had passed four months previously. Hall asserts that striking this testimony effectually became a "death penalty" ruling because a malpractice action must be proven through the use of expert testimony,[34] and for Hall, there was no other expert testimony because of the missed deadline and the court's refusal to allow her to designate another expert witness. However, this argument fails because there is no evidence in the record that Hall requested leave of court to designate an additional expert witness to supplement or replace *Hrehorovich's* testimony. The only witnesses named in her motion for leave did not involve the issue of GSH's liability. This is true even though Hall had known since August 16, the date that GSH filed its *second* motion to strike expert witness, that the sole, adverse evidence towards GSH could possibly be stricken. Clearly, the burden was Hall's to establish the admissibility of the proffered testimony after GSH filed its *first* motion to strike expert witness, and she did not meet that burden. That the judge signed the order striking Hrehorovich as an expert one day after granting summary judgment is of no effect to the determination of this case.

Hall contends that the trial court erred in finding Hrehorovich unqualified to testify as an expert on nursing standards of care. Whether a witness qualifies as an expert is a matter of judicial discretion.[35] The trial court must determine if the witness has the requisite "knowledge, skill, expertise, training, or education" that could assist the trier of fact as mandated by Texas Rule of Civil Evidence 702.[36] Absent a clear abuse

---

**34.** *Hart v. VanZandt,* 399 S.W.2d 791, 797 (Tex. 1965).

**35.** Tex.R. Civ. Evid. 104(a), 702; *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995).

**36.** *United Blood Servs. v. Longoria,* 938 S.W.2d 29, 30–31 (Tex.1997).

of discretion, an appellate court will not disturb the trial court's ruling on the qualification of the witness as an expert.[37] The abuse of discretion test is whether the trial court acted without reference to guiding principles or rules.[38] The party offering the witness's testimony has the burden of proving that the expert is qualified under Rule 702.[39] Various jurisdictions, including Texas, that have addressed the issue of whether a physician is qualified to render expert testimony as to nursing standards of care have found physicians to be qualified.[40] For example, in the Texas medical malpractice case of *Webb v. Jorns*,[41] an anesthesiologist who graduated from Yale Medical School and who taught anesthesiology to nurses testified as an expert witness to the standard of care required of nurse anesthetists.[42] In the California case of *Goff v. Doctors General Hospital of San Jose*,[43] the court, in finding that the doctor was competent to testify as to the defendant nurses' negligence and standard of care, stated, "[S]urely, a qualified doctor would know what was standard procedure for nurses to follow." [44] Therefore, just because Hrehorovich is a physician does not necessarily render him unqualified as an expert on nursing standards of care.

Hrehorovich, a graduate of Harvard Medical School, is an internist and a specialist in pulmonary diseases, infectious diseases, critical care, and advanced internal medicine.

He has taught several nursing courses, including management of critical care patients, and although he has never provided expert testimony *solely* on nursing standards, he has testified about nursing standards as they have arisen in his capacity as an expert on other issues. He based his testimony on this background, the medical records pertinent to relevant issues of this case, and various medical literature concerning proper catheterization. We find that Hrehorovich was generally qualified to testify about the standards of care of nursing.

GSH asserts that Hrehorovich was unqualified as an expert witness because he testified that he was unfamiliar with nursing standards of care *in Texas.*[45] However, Hrehorovich stated by affidavit that he was familiar with the standard of care for appropriate catheter placement and diagnosis and emergency treatment of cardiac tamponade that exist *under same or similar circumstances.*[46] He also testified that he was familiar with the nursing standards contained in the Joint Commission on Accreditation of Health Care Organizations.[47] Further, he testified that he assumed that nursing standards of care in Texas are similar to nursing standards in the rest of the country.

Texas adopted the "same or similar communities" standard in *Turner v. Stok-*

37. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996). Rule 702 mandates that experts be qualified "by knowledge, skill, experience, training, or education," and that their testimony "assist the trier of fact." Tex R. Civ. Evid. 702; *Broders*, 924 S.W.2d at 153.

38. *du Pont*, 923 S.W.2d at 558.

39. *Broders*, 924 S.W.2d at 151.

40. *See McMillan v. Durant*, 312 S.C. 200, 439 S.E.2d 829, 832 (1993) (adding that fact that expert was neurosurgeon and not nurse went to weight of testimony, not its admissibility); *Goff v. Doctors Gen. Hosp. of San Jose*, 166 Cal.App.2d 314, 333 P.2d 29, 33 (1958).

41. 488 S.W.2d 407 (Tex.1972).

42. *Id.*

43. 166 Cal.App.2d 314, 333 P.2d 29.

44. *Goff*, 333 P.2d at 33.

45. The Medical Liability and Insurance Improvement Act replaced the locality rule only in informed consent cases, which is not an issue in the present case. Tex.Rev.Civ. Stat. Ann. art. 4590i, § 6.02 (Vernon Supp.1997).

46. *See Harris County Hosp. Dist. v. Estrada*, 872 S.W.2d 759, 762 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (holding that nonphysician, nonregistered nurse who is familiar with standard at similar hospital can qualify as expert witness in medical malpractice case).

47. *See Denton Reg'l Med. Ctr., Epic Healthcare Group, Inc. v. LaCroix*, 947 S.W.2d 941 (Tex. App.—Fort Worth 1997, n.w.h.) (stating that in determining hospital's standard of care in medical malpractice suit, court may look to standards set forth in Joint Commission on Accreditation of Health Care Organization, although those standards are not dispositive).

er.[48] In a medical malpractice action, the appellant has the burden to establish by expert testimony (1) the standard of care in the community and (2) facts showing that the physician or hospital deviated from that standard.[49] One appellate court interpreted the Texas Supreme Court's ruling in *Peterson v. Shields*,[50] and held that the locality rule is applicable in Texas unless a different standard is imposed by statute, including the Medical Liability Act.[51] We find no statute applicable to this case that limits the application of the locality rule in this case.

The purpose of the locality rule is to prevent unrealistic comparisons between the standards of practice in communities where facilities and resources may greatly differ.[52] The customary criticism of the locality rule is that it tends to perpetuate and protect an inferior local standard of care.[53] While GSH compares nursing standards between Texas and the United States rather than between communities within one state, there is no evidence that nursing standards of care in Texas greatly differ from or are inferior to national standards.[54] Furthermore, the evolution of Texas cases addressing community standards have deemed expert testimony of doctors from other communities admissible.[55]

We cannot say that the locality rule has been totally abrogated in Texas, although there is some universality of education, training, testing, and travel in the realm of medical treatment and a right to expect the same basic quality of care. In the present case, however, under the summary judgment standard we construe favorable to the nonmovant, we can make a determination in this case without reaching this question.

 In his affidavit, Hrehorovich established that he was familiar with the standard of care for appropriate diagnosis and treatment of patients with renal failure that existed under the same or similar circumstances as the case on trial. The locality rule is served when this basic language is applied. For this reason, it is not necessary to use "this or similar communities" in the charge to the jury. Hrehorovich's later testimony in his deposition was not a dispute of this declaration, but was rather a statement that he assumed that Texas complied with these minimum standards. There has been no summary judgment proof introduced that Texas or the local region involved had different standards. It is accepted that certain minimum standards are universally regarded as ordinary medical standards.[56] We find that the trial court abused its discretion in failing to consider the testimony of Hrehorovich as an expert witness. His testimony raises a

**48.** *Eckert v. Smith*, 589 S.W.2d 533, 536 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.) (citing *Turner v. Stoker*, 289 S.W. 190, 194 (Tex.Civ. App.—Eastland 1926, writ ref'd)).

**49.** *Rodriguez v. Reeves*, 730 S.W.2d 19, 21 (Tex. App.—Corpus Christi 1987, writ re'f n.r.e.); *see Hilzendager v. Methodist Hosp.*, 596 S.W.2d 284, 286 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ) (applying community standard of hospital care).

**50.** 652 S.W.2d 929 (Tex.1983).

**51.** *Hickson v. Martinez*, 707 S.W.2d 919, 925 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

**52.** *Birchfield v. Texarkana Memorial Hosp.*, 747 S.W.2d 361, 366 (Tex.1987).

**53.** *Eckert*, 589 S.W.2d at 537. Similarly, in non-medical professions, courts have rejected a strict locality rule for establishing standards of care. *See Underwood v. Waterslides of Mid–America, Inc.*, 823 S.W.2d 171 (Tenn.App.1991) (discounting strict locality rule in establishing standard of care for engineers); *but see* RESTATEMENT (SECOND) OF TORTS § 299A cmt. b (1965) (applying community standard to dentists, pharmacists, oculists, accountants, airplane pilots, electricians, plumbers, carpenters, and blacksmiths)

**54.** *See* RESTATEMENT (SECOND) OF TORTS § 299A cmt. g (1965) (commenting that although allowances for type of community is commonly made in cases of physicians or surgeons because of differences in medical skill found throughout nation or different communities, knowledge and skill required in particular professions may be so uniform in different areas that court will not apply community standard).

**55.** *Eckert*, 589 S.W.2d at 537 (citing line of cases where physicians from other states provide expert testimony in Texas medical malpractice cases); *see Estrada*, 872 S.W.2d at 762 (holding that nonphysician, nonregistered nurse who is familiar with standard of care at similar hospital, not necessarily one in particular locale, can qualify by experience as medical expert).

**56.** *See Webb*, 488 S.W.2d at 411.

material issue of fact as to the liability of the hospital. This point of error is sustained.

We reverse the trial court's summary judgment ruling against Huff and Good Shepherd Hospital and remand for a new trial.