NO. 07-09-0104-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 29, 2009
______________________________

METHODIST HOSPITAL LEVELLAND d/b/a 
                                       COVENANT HOSPITAL LEVELLAND, 

                                                                                                           Appellant

v.

JEFFREY KIMBRELL, 

                                                                                                           Appellee
_________________________________

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 08-06-21,355; HON. PAT PHELAN, PRESIDING
_______________________________

Memorandum Opinion
_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.
          In this accelerated appeal, Methodist Hospital Levelland d/b/a Covenant Hospital
Levelland (Covenant) appeals from an order of the trial court denying its objections to the
sufficiency of a medical expert report served by Jeffrey Kimbrell (Kimbrell) in his lawsuit for
medical malpractice against Covenant.


 Kimbrell suffered respiratory arrest after allegedly
being given too much narcotic pain medication following surgery to remove his gall bladder. 
In seeking reversal of the order, Covenant asserts that the expert report of Dr. Rolando H.
Saenz (Saenz) failed to 1) show he was qualified to render an opinion as to the standard
of care for nurses, 2) state the standard of care applicable to a nurse, and 3) identify the
causal relationship between the alleged breach of the standard of care and the claimed
damages. We reverse the order.
          Background
          After successful surgery on Kimbrell, Dr. Weerachai Wiri (Wiri) wrote post-operative
orders for intravenous Demerol to be given every two hours “as needed” for pain as well
as a Fentanyl transdermal patch. The nurse applied the patch at 3:05 p.m. and ten
minutes later gave Kimbrell a dose of Demerol. Two additional doses of Demerol were
administered at 5:25 p.m. and at 11:35 p.m. The next morning, Kimbrell was found to be
in respiratory arrest.
          Kimbrell filed suit on June 17, 2008, pursuant to Chapter 74 of the Civil Practice and
Remedies Code. As required by §74.351, he served his expert report on October 13,
2008. See Tex. Civ. Prac. & Rem. Code Ann. §74.351(a) (Vernon Supp. 2008). In that
report, Saenz opined about the negligence of Wiri and the nurse administering medicine
to Kimbrell. Covenant does not challenge the adequacy of the report with respect to Wiri. 
However, it does contend that Saenz failed to illustrate that he was qualified to offer an
opinion as to the standard of care applicable to nurses, failed to state the applicable
standard of care imposed on nurses, and failed to establish a causal link between the
nurse’s actions and the damages suffered by Kimbrell.
 
 
          Discussion  
          An expert witness on the issue of whether the health care provider departed from
accepted standards of care may qualify as one only if he: 
(1) is practicing health care in a field of practice that involves the same
type of care or treatment as that delivered by the defendant health
care provider, . . . ;
 
(2) has knowledge of accepted standards of care for health care
providers for the diagnosis, care, or treatment of the illness, injury, or
condition involved in the claim; and
 
3) is qualified on the basis of training or experience to offer an expert
opinion regarding those accepted standards of health care.
 
Id. §74.402(b) (Vernon 2005). Here, Saenz stated that he was board certified in general
as well as colon and rectal surgery, did a six-year surgical rotation which included one year
of intensive care medicine, did a fellowship in colon and rectal surgery, had been an
assistant professor of clinical surgery, and maintained a private practice comprised of 60%
general surgery and 40% colon and rectal surgery. He further represented that he
performed 500-600 surgeries a year, 25 to 35 percent of which encompass the removal
of gall bladders. So too did he opine that the nurse who administered the pain medication
“was negligent in not questioning that two narcotics were being ordered at the same time,
and in administering the types of narcotics in the dosage levels as prescribed without first
determining the patient’s pain tolerance.” 
          Yet, nothing is said in the report about how Saenz came to know the standards of
care applicable to nurses, as opposed to physicians, in like circumstances. That is
problematic. Admittedly, being a physician may qualify someone to offer an opinion on the
standard of care applicable to nurses or other medical personnel merely because he is a
physician. In re Stacy K. Boone, P.A., 223 S.W.3d 398, 404 (Tex. App.–Amarillo 2006,
orig. proceeding); Hall v. Huff, 957 S.W.2d 90, 100 (Tex. App.–Texarkana 1997, pet.
denied). Yet, the converse is equally true; being titled a physician does not alone qualify
a doctor to opine about the standards a nurse must follow. And, while various courts have
found physicians so qualified, they did so when the physicians stated that they were
familiar with the standard of care applicable to nurses when preventing or treating the
illness, injury or condition involved or that they were familiar with the standard of care and
responsibilities of nurses because they had worked and interacted with them. Baylor
Medical Center v. Wallace, 278 S.W.3d 552, 558 (Tex. App.–Dallas 2009, no pet.); see
also San Jacinto Methodist Hospital v. Bennett, 256 S.W.3d 806, 813 (Tex. App.–Houston
[14th Dist.] 2008, no pet.) (noting that the expert stated he was familiar with the standard
of care for nurses in the treatment of decubitus ulcers); In re Stacy K. Boone, P.A., 223
S.W.3d at 404 (noting that the expert stated he was familiar with the standards of care and
regularly provided and supervised care in connection with the treatment of patients similarly
situated in terms of physicians, physician’s assistants, nurses, and hospitals); Hall v. Huff,
957 S.W.2d at 99-100 (noting that the expert stated he taught nursing courses and had
testified about the standards of nursing care). No such allegations appear in Saenz’ report
or curriculum vitae, though. That is, neither illustrate that he was familiar with the
standards of nursing care as they relate to post-operative pain management, that he
supervised or worked with nurses in that area, or that he had taught classes to nurses on
the subject. 
          In short, Saenz may well be highly qualified to render an opinion on the standards
of care a nurse must follow. Yet, we cannot simply conclude that he is. Indeed, standards
of care may well differ between physicians and nurses. See e.g., Simonson v. Keppard,
225 S.W.3d 868, 873-74 (Tex. App.–Dallas 2007, no pet.) (so noting there). And before
we can deem sufficient his opinions regarding the care provided by the nurse at bar, we
must know not only what the nurse was obligated to do but also how the expert knew that. 
Unlike situations wherein parents are talking to their children, saying or assuming
“because” is not enough.
          Given our disposition of the first argument, we need not address the others
proffered by Covenant. Instead, we reverse the trial court’s order and remand the cause
for further proceedings. 
 
                                                                           Brian Quinn 
                                                                          Chief Justice 



ial', sans-serif">          Gore’s counsel explained the purpose of the offer of proof: “if the court does not
allow the testimony into evidence in front of the jury, I would like to at least present it now
for the court to consider after the verdict and before a judgment is entered.” The court
discerned the basis of the offer was: “due to some kind of contract or an agreement with
a health care provider that what was actually accepted in full is less than what was charged
Plaintiff; is that correct?” Gore’s counsel agreed with this assessment. 
          Gore then called the records custodians for Covenant and Lubbock Radiology as
witnesses for the offer of proof. Each testified that Faye’s charges were discounted
pursuant to a contract between the provider and Faye’s health insurance company
FirstCare. Through these witnesses, Gore offered unredacted copies of the previously
admitted affidavits of services and charges of Covenant and Lubbock Radiology.


 
          At the conclusion of the offer of proof, the court restated Gore’s position: “And then
he is making a motion to offer the testimony of [the records custodians] in front of the jury.” 
On the court’s request for a response, Faye’s counsel voiced an objection to the testimony
of the records custodians before the jury. The court then ruled:
The court is going to sustain her objection and overrule you, preventing you
from putting this in front of the jury. And the court’s of the opinion, at this
time, until further guidance is given the court, that it is a post-verdict pre-judgment matter. And so the offer of proof will stand but I will not allow that
testimony in front of the jury. 
 
          The following exchange then occurred:
 
[Gore’s counsel]: “Okay. And, Your Honor, in the alternative then, we would
ask the court to consider the testimony post-verdict pre-judgment.”
 
[The Court]: “Yes, we will do that.”
 
          * * *
[Faye’s counsel]: “And, Your Honor, for clarification, defense exhibits–I don’t
remember the numbers, but those include information regarding
adjustments, will not be presented to the jury?
 
[The Court]: “That’s right. That is just for the Judge before he
prepares–executes a judgment.”
 
          At the charge conference, neither party objected to the proposed damage question
which in part inquired what amount of money would compensate Faye for “reasonable
expenses of necessary medical care actually incurred in the past.” The jury found each
party negligent, assessed fault at 25% to Faye and 75% to Gore, and awarded Faye $250
for past physical pain, $6,391.10 for past medical expenses, and zero for past lost wages.
           After receipt of the verdict and discharge of the jury the court determined it was not
feasible to accurately offset the past medical charges according to Gore’s section 41.0105
evidence because the jury awarded an amount less than the total amount of charges
presented by Faye’s affidavits.


 The court signed a judgment awarding Faye the full
amount of past medical expenses found by the jury, reduced by the percentage of fault the
jury attributed to Faye. 
          Gore moved for a new trial asserting factual and legal insufficiency of the evidence
supporting the award of past medical expenses because of the limiting effect of section
41.0105 and abuse of discretion by the court for not admitting Gore’s section 41.0105
evidence before the jury. The motion for new trial was apparently overruled by operation
of law and this appeal followed.
Issue Presented
          Gore brings a single issue on appeal:
“The trial court erred in excluding properly offered exhibits and testimony
concerning the amounts of medical expenses actually paid and accepted by
Appellee’s health care providers as payment in full.”
 
          As noted, the trial court admitted Gore’s section 41.0105 evidence, but only for its
post-verdict consideration in fashioning a judgment. Gore’s argument in her brief makes
clear that her complaint is the trial court abused its discretion by not allowing her to present
the section 41.0105 evidence for the jury’s consideration in answering the past medical
expense damages question. Gore’s contention is that admission of the evidence before
the jury for that purpose was required by section 41.0105. She does not argue it was
admissible for any purpose other than implementation of that statute. 
 
Discussion
          The admission and exclusion of evidence at trial is committed to the sound
discretion of the trial court. City of Brownsville v. Alvarado, 897 S.W.2d 750, 753 (Tex.
1995). See also Dow Chemical Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001); Schroeder
v. Brandon, 141 Tex. 319, 172 S.W.2d 488, 491 (1943) (both noting great discretion vested
in trial court over conduct of trial). A trial court abuses its discretion when its ruling is
arbitrary, unreasonable or without reference to any guiding rules or legal principles. E.I.
du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995)
          The correctness of Gore’s position that the trial court was required to admit her
section 41.0105 evidence before the jury is not apparent from the language of section
41.0105. The legislature enacted the section as an addition to chapter 41 of the Civil
Practice and Remedies Code, which chapter “establishes the maximum damages that may
be awarded in an action” subject to its provisions. Tex. Civ. Prac. & Rem. Code Ann. §
41.002(b) (Vernon Supp. 2007). By its language the limitation on damages prescribed by
section 41.0105 is mandatory. But unlike other provisions of chapter 41, section 41.0105
contains no procedural direction for its application at trial. See, e.g., Tex. Civ. Prac. &
Rem. Code Ann. § 41.008(a), (e) (Vernon Supp. 2007) (prescribing separate
determinations of economic and other compensatory damages, and prohibiting making
provisions known to jury); Tex. Civ. Prac. & Rem. Code Ann. § 41.009 (Vernon 1997)
(requiring bifurcated trial on motion); Tex. Civ. Prac. & Rem. Code Ann.§§ 41.003(e) and
41.012 (Vernon 1997 and Supp. 2007) (mandating jury instructions in cases involving
claims for exemplary damages).
          In their appellate briefs, the parties devote a good deal of attention to the question
whether introduction before the jury of evidence that Faye benefitted from her insurer’s
contractual agreements with Covenant and Lubbock Radiology runs contrary to the
collateral source rule.


 Gore contends that admission of such evidence does not violate
the collateral source rule.


 Review of the record convinces us that disposition of this
appeal does not require our evaluation of the impact of section 41.0105 on the collateral
source rule. This appeal presents only the narrow procedural question whether the trial
court was required to implement section 41.0105 through presentation of evidence to the
jury. Even if Gore is correct that admission of her section 41.0105 evidence would not
violate the collateral source rule, it is obvious that the admission of such evidence before
the jury in a personal injury case involves a significant departure from existing trial practice
in Texas. See, e.g., Taylor, 132 S.W.3d at 625 (“It is generally considered error for
insurance coverage of either party to be mentioned by the other party during trial of a
personal injury cause of action.” (citations omitted)). Without a more explicit statutory
provision or guidance from our supreme court, we see no abuse of discretion in the trial
court’s decision to apply section 41.0105 post-verdict.



          Gore’s single issue is overruled, and the trial court’s judgment is affirmed.
 


                                                                James T. Campbell

                                                                        Justice