NO. 07-09-0104-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

SEPTEMBER 29, 2009
_____

METHODIST HOSPITAL LEVELLAND d/b/a
COVENANT HOSPITAL LEVELLAND,

Appellant

v.

JEFFREY KIMBRELL,

Appellee
_____

FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;

NO. 08-06-21,355; HON. PAT PHELAN, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

In this accelerated appeal, Methodist Hospital Levelland d/b/a Covenant Hospital Levelland (Covenant) appeals from an order of the trial court denying its objections to the sufficiency of a medical expert report served by Jeffrey Kimbrell (Kimbrell) in his lawsuit for medical malpractice against Covenant.[1] Kimbrell suffered respiratory arrest after allegedly being given too much narcotic pain medication following surgery to remove his gall bladder.

_____

[1]Covenant also sought dismissal of the lawsuit.

In seeking reversal of the order, Covenant asserts that the expert report of Dr. Rolando H. Saenz (Saenz) failed to 1) show he was qualified to render an opinion as to the standard of care for nurses, 2) state the standard of care applicable to a nurse, and 3) identify the causal relationship between the alleged breach of the standard of care and the claimed damages. We reverse the order.

*Background*

After successful surgery on Kimbrell, Dr. Weerachai Wiri (Wiri) wrote post-operative orders for intravenous Demerol to be given every two hours "as needed" for pain as well as a Fentanyl transdermal patch. The nurse applied the patch at 3:05 p.m. and ten minutes later gave Kimbrell a dose of Demerol. Two additional doses of Demerol were administered at 5:25 p.m. and at 11:35 p.m. The next morning, Kimbrell was found to be in respiratory arrest.

Kimbrell filed suit on June 17, 2008, pursuant to Chapter 74 of the Civil Practice and Remedies Code. As required by §74.351, he served his expert report on October 13, 2008. *See* Tex. Civ. Prac. & Rem. Code Ann. §74.351(a) (Vernon Supp. 2008). In that report, Saenz opined about the negligence of Wiri and the nurse administering medicine to Kimbrell. Covenant does not challenge the adequacy of the report with respect to Wiri. However, it does contend that Saenz failed to illustrate that he was qualified to offer an opinion as to the standard of care applicable to nurses, failed to state the applicable standard of care imposed on nurses, and failed to establish a causal link between the nurse's actions and the damages suffered by Kimbrell.

*Discussion*

An expert witness on the issue of whether the health care provider departed from accepted standards of care may qualify as one only if he:

(1)     is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, . . . ;

(2)     has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

3)     is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

*Id.* §74.402(b) (Vernon 2005). Here, Saenz stated that he was board certified in general as well as colon and rectal surgery, did a six-year surgical rotation which included one year of intensive care medicine, did a fellowship in colon and rectal surgery, had been an assistant professor of clinical surgery, and maintained a private practice comprised of 60% general surgery and 40% colon and rectal surgery. He further represented that he performed 500-600 surgeries a year, 25 to 35 percent of which encompass the removal of gall bladders. So too did he opine that the nurse who administered the pain medication "was negligent in not questioning that two narcotics were being ordered at the same time, and in administering the types of narcotics in the dosage levels as prescribed without first determining the patient's pain tolerance."

Yet, nothing is said in the report about how Saenz came to know the standards of care applicable to nurses, as opposed to physicians, in like circumstances. That is problematic. Admittedly, being a physician may qualify someone to offer an opinion on the standard of care applicable to nurses or other medical personnel merely because he is a

3

physician. *In re Stacy K. Boone, P.A.,* 223 S.W.3d 398, 404 (Tex. App.–Amarillo 2006, orig. proceeding); *Hall v. Huff,* 957 S.W.2d 90, 100 (Tex. App.–Texarkana 1997, pet. denied). Yet, the converse is equally true; being titled a physician does not alone qualify a doctor to opine about the standards a nurse must follow. And, while various courts have found physicians so qualified, they did so when the physicians stated that they were familiar with the standard of care applicable to nurses when preventing or treating the illness, injury or condition involved or that they were familiar with the standard of care and responsibilities of nurses because they had worked and interacted with them. *Baylor Medical Center v. Wallace,* 278 S.W.3d 552, 558 (Tex. App.–Dallas 2009, no pet.); *see also San Jacinto Methodist Hospital v. Bennett,* 256 S.W.3d 806, 813 (Tex. App.–Houston [14th Dist.] 2008, no pet.) (noting that the expert stated he was familiar with the standard of care for nurses in the treatment of decubitus ulcers); *In re Stacy K. Boone, P.A.,* 223 S.W.3d at 404 (noting that the expert stated he was familiar with the standards of care and regularly provided and supervised care in connection with the treatment of patients similarly situated in terms of physicians, physician's assistants, nurses, and hospitals); *Hall v. Huff,* 957 S.W.2d at 99-100 (noting that the expert stated he taught nursing courses and had testified about the standards of nursing care). No such allegations appear in Saenz' report or curriculum vitae, though. That is, neither illustrate that he was familiar with the standards of nursing care as they relate to post-operative pain management, that he supervised or worked with nurses in that area, or that he had taught classes to nurses on the subject.

In short, Saenz may well be highly qualified to render an opinion on the standards of care a nurse must follow. Yet, we cannot simply conclude that he is. Indeed, standards of care may well differ between physicians and nurses. *See e.g., Simonson v. Keppard*, 225 S.W.3d 868, 873-74 (Tex. App.–Dallas 2007, no pet.) (so noting there). And before we can deem sufficient his opinions regarding the care provided by the nurse at bar, we must know not only what the nurse was obligated to do but also how the expert knew that. Unlike situations wherein parents are talking to their children, saying or assuming "because" is not enough.

Given our disposition of the first argument, we need not address the others proffered by Covenant. Instead, we reverse the trial court's order and remand the cause for further proceedings.


Brian Quinn
Chief Justice